# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

RECEIVED

2006 AUG 8 A 9:59

GEORGIA POWER COMPANY )
241 Ralph McGill Boulevard, N.E. )
Atlanta, Georgia 30308-3374, )
                              )
            Plaintiff, )
                              )
v.                            )    Civil Action File No: _3:06 cv 698-_
                              )
MICHAEL BRITT MOON,           )
                              )
            Defendant. )

## COMPLAINT

**(Declaratory Judgment, Quiet Title, Trespass, and Ejectment)**

COMES NOW Plaintiff Georgia Power Company ("Georgia Power"), through the undersigned

counsel, and states as follows for its Complaint for Declaratory Judgment, Quiet Title, Trespass, and

Ejectment:

## INTRODUCTION

1. Georgia Power is the owner and operator of the Bartletts Ferry Hydroelectric Project (the

"Project") under License No. 485, issued on April 13, 1978 (the "License"), by the Federal Power

Commission – now the Federal Energy Regulatory Commission ("FERC") – pursuant to its authority under

the Federal Power Act, 16 U.S.C. §§ 791a, *et seq.* (the "FPA"). The Project is located on the

Chattahoochee River in Chambers and Lee Counties, Alabama, and Harris County, Georgia, and consists

of a dam, a powerhouse, a 5,850 acre reservoir known as Lake Harding, and certain lands adjacent to the

reservoir.

2. The Federal Power Commission issued a 50-year license, effective December 15, 1924, to the Columbus Electric and Power Company for the construction, operation, and maintenance of the Bartletts Ferry Project. The original project works included a dam and a powerhouse containing two 15 MW generating unites, both of which were placed in service on February 15, 1926. On November 15, 1927, the Federal Power Commission authorized Columbus Electric and Power Company to install a third 15 MW generating unit, which was placed in service in early 1928. Georgia Power acquired all assets of Columbus Electric and Power Company on June 26, 1930. On June 11, 1940, the Federal Power Commission authorized a transfer of license from Columbus Electric and Power Company to Georgia Power, effective as of June 26, 1930.

3. Since acquiring its License and pursuant to its License. Georgia Power has claimed fee simple ownership of the real estate that lies below elevation 525 according to the United States Geological Survey Data.

4. This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and the FPA to resolve a controversy resulting from the Defendant's unauthorized use of and encroachment upon Project lands and waters in the Project and adjacent to Lake Harding, and other property adjacent to Project lands by, *inter alia*, erecting and/or maintaining a structure on said lands without permission from and agreement with Georgia Power, and denying Georgia Power access to its lands, notwithstanding Georgia Power's rights and authority and obligation under its License and the FPA to regulate and permit shoreline structures and use of Georgia Power's lands so as to maximize the scenic, recreational, environmental, and aesthetic uses of the Project in accord with the production of hydroelectric power.

5. Defendant's action is in direct contravention of the License, the FPA, Georgia Power's authority and rights thereunder, and Georgia Power's property rights.

## PARTIES

6. Plaintiff Georgia Power is a Georgia corporation, having its principal place of business in Atlanta, Georgia, and is deemed a citizen of the State of Georgia pursuant to 28 U.S.C. § 1332(c)(1). It is an electric public utility that is engaged primarily in the business of generating, transmitting, and distributing electrical power by retail sales to residential, commercial, and industrial customers located in Georgia, and by wholesale sales to various electric utilities, municipalities, and electric cooperatives, pursuant to the authority of the FPA, as administered by FERC. It is authorized and does conduct business in the State of Alabama.

7. Defendant Michael Britt Moon is an individual who resides at 603 Lee Road 843, Salem, Lee County, Alabama 36874.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because it arises under the laws of the United States, particularly the FPA. The District Courts of the United States hold jurisdiction of suits arising under the FPA pursuant to 16 U.S.C. § 825p. This Court also has subject matter jurisdiction of this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different States. Additional subject matter jurisdiction is granted under 28 U.S.C. § 1367, which grants the District Courts supplemental jurisdiction over claims related to a claim over which the District Courts have original jurisdiction.

3

9. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and 16 U.S.C. § 825p because the property is located in this judicial district, the Defendant resides in this judicial district, and the acts, events, transaction, or omissions giving rise to the claim occurred in this district.

## FACTS

10. Under authority delegated by Congress in the FPA, including authority set forth in section 10(a)(1) of the FPA, 16 U.S.C. § 803(a), FERC granted Georgia Power limited authority to permit certain reasonable uses of Project works, lands, and waters. The Federal Power Act is a comprehensive scheme regulating water resource development which includes protection, mitigation, and enhancement of fish and wildlife including habitat, recreation, and other aspects of environmental quality and where applicable water supply, irrigation, flood control, in addition to power generation. 16 U.S.C. §§ 797(e), 803(a). Activities on the project and use of project lands and waters is governed by the Federal Power Act under the purview of the Federal Energy Regulatory Commission pursuant to the license issued to Georgia Power Company referenced in Paragraph 1, supra. Under its License in general, and under Article 34 in particular, Georgia Power has the authority and responsibility to: (1) at all times supervise and control all permitted uses within the Project boundaries; (2) allow only those uses and occupancies which protect and enhance the scenic, recreational, and other environmental values of the Project; (3) protect environmental resources and engage in shoreline control, including shoreline aesthetic or scenic values; and (4) take any lawful action necessary to enforce the exercise of its authority. 51 FERC ¶ 62,197 (May 31, 1990)

11. In sum, Georgia Power holds federal authority to grant permission to construct docks and other facilities on lands and waters within the Project boundary, Georgia Power has the responsibility under its License to supervise and control such structures therein when necessary to comply with its obligations

under its License and the FPA. Its License further authorizes Georgia Power both to establish a permitting

program for such structures and to impose a reasonable fee to recover its costs of administering the permit

program. Article 34 of the License provides, in pertinent part, as follows:

> (a) In accordance with the provisions of this article, the Licensee shall
> have the authority to grant permission for certain types of use and
> occupancy of project lands and waters for certain other types of use and
> occupancy, without prior Commission approval. The Licensee may
> exercise the authority only if the proposed use and occupancy is consistent
> with the purpose of protecting and enhancing the scenic, recreational, and
> other environmental values of the project. For those purposes, the
> Licensee shall also have continuing responsibility to supervise and control
> the use of, and ensure compliance with the covenants of the instrument of
> conveyance for, any interests that it has conveyed under this article. If a
> permitted use and occupancy violates any condition of this article or any
> other condition imposed by the Licensee for protection and enhancement
> of the project's scenic, recreational, or other environmental values, or if
> a covenant of a conveyance made under the authority of this article is
> violated, the Licensee shall take any lawful action necessary to correct the
> violation. For a permitted use or occupancy, that action includes, if
> necessary, canceling the permission to use and occupy the project lands
> and waters and requiring the removal of any non-complying structures and
> facilities.
> (b) The types of use and occupancy of project lands and waters for which
> the Licensee may grant permission without prior Commission approval
> are: (1) landscape plantings; (2) noncommercial piers, landings, boat
> docks, or similar structures and facilities that can accommodate no more
> than 10 watercraft at a time where said facility is intended to serve single
> family type dwellings; and (3) embankments, bulkheads, retaining walls,
> or similar structures for erosion control to protect the existing shoreline.
> To the extent feasible and desirable to protect and enhance the project's
> scenic, recreational, and other environmental values, the Licensee shall
> require multiple use and occupancy of facilities for access to project lands
> and waters. . . . To implement this paragraph (b), the Licensee may,
> among other things, establish a program for issuing permits for the
> specified types of use and occupancy of project lands and waters, which
> may be subject to the payment of a reasonable fee to cover the Licensee's
> costs of administering the permit program. . . .

51 FERC ¶ 62,197 (May 31, 1990).

12. Georgia Power holds certain rights to lands and waters within the project. Relevant to this action, Georgia Power has claimed fee simple ownership of the real estate that lies below elevation 525 according to the United States Geological Survey Data. At all times, since Georgia Power acquired the assets of Columbus Power and Electric Company, Georgia Power has claimed ownership of this property. Georgia Power has flooded some of this property, and Georgia Power has demanded that all owners of adjacent property recognize its ownership of the real estate that lies below elevation 525 according to the United States Geological Survey Data.

13. The dam built by Columbus Electric and Power Company and acquired by Georgia Power on June 26, 1930 is at an elevation of 521.

14. Defendant claims to be the fee simple owner of the following property:

> A tract or parcel of land according to a survey of Part of Lot 1, Block "A", Unit 2 and part of Lot 30, Block 2 unit 1, Lakeview Shore Subdivision, lying in Section 33, Township 20 North, Range 30 East, Lee County, Alabama, prepared by Jack B. Shay, R.L.S. Ala. Reg. No. 15457, dated October 24, 1993, a copy of which is recorded in Book 1797, Page 008, in the Office of the Judge of Probate of Lee County, Alabama

pursuant to a deed dated July 28, 2004, and filed for record in the Office of the Judge of Probate of Lee County, Alabama, in Deed Volume 2265, at page 624, (the "Property") attached hereto as Exhibit A, that includes the real estate that lies below elevation 525 according to the United States Geological Survey Data, which elevation is 152 feet above the crest of the spillway of the Goat Rock Dam, as constructed across the Chattahoochee River.

15. Defendant's deed is erroneous. The Lakeview Shore Subdivision lies in Section 33, Township 20 North, Range 29 East.

6

16. Defendant's predecessors in title have recognized Georgia Power's ownership of all that real estate lying below the 525 elevation. *See* Agreement between Georgia Power and D.E. Bland, dated January 31, 1955; Access Lease between Georgia Power and Dorothy Motley, dated August 1, 1991; Access Lease between Georgia Power and Daphne and James David Grissett, dated December 1, 1994, attached hereto as Exhibit B.

17. Under information and belief, the Defendant, without informing Georgia Power or seeking its permission, caused to be constructed, own, and maintain a structure and/or structures, including a portion of the Defendant's residence, upon Georgia Power's Property on the shoreline of Lake Harding and within the Project and its boundary as established by the FPA license..

## Count 1

### (Declaratory Judgment and Injunctive Relief)

18. Paragraphs 1-17 are incorporated herein by reference.

19. Defendant has caused to be constructed, own, and maintain a structure and/or structures upon the Property on the shoreline of Lake Harding and within the project boundary established by the FPA license without authorization pursuant to the license.

20. Georgia Power requested that the Defendant execute an Access Lease, which would constitute authorization for such structures referenced in Paragraph 17, supra, whereby he would lease from Georgia Power all that parcel of land lying below the 525 foot contour line (M.S.L.) of Georgia Power Bartletts Ferry Recreation Development adjacent to Lot Number 1, Block "A", Unit 2 and part of Lot 30, Block 2, Unit 1, of Section 33 of Township 20 North, Range 29 East of Lee County, Alabama, subject to

7

appropriate conditions to ensure that the structures were constructed and maintained in accordance with the FPA and license.

21. Defendant has refused to execute the access lease.

22. Therefore, an actual and immediate controversy, within the meaning of the Declaratory Judgment Act, exists between parties with adverse interests, and the controversy is concrete and capable of judicial resolution. The parties will be harmed, left uncertain as to their legal rights and duties, and exposed to legal liabilities if this Court does not resolve the controversy here presented.

23. Georgia Power is suffering irreparable injury to its property and to its licensed hydropower Project and seeks a declaratory judgment stating that Georgia Power, by the authority granted to it by FERC under the FPA and the license issued to Georgia Power for the Project, is authorized to regulate certain activities in the Project including Defendant's construction, ownership, and maintenance of a structure and/or structures within the Project. Georgia Power further seeks a declaratory judgment stating that the Defendant's use of the Project and Georgia Power's property without a permit is unauthorized and is in violation of the License and the FPA, Alabama property laws, and Georgia Power's authority and rights thereunder.

24. Georgia Power is suffering irreparable injury and is in need of injunctive relief to prevent and prohibit the Defendant's further interference with Georgia Power's property rights, authority and rights under the License and the FPA, and the public's entitlement to the most beneficial and comprehensive development of the Project.

### Count 2

### (Ejectment)

8

25.  Paragraphs 1-24 are incorporated herein by reference.

26.  Georgia Power is the owner of and in possession of the real estate that lies below elevation 525 according to the United States Geological Survey Data.

27.  Georgia Power is the owner of and is and has been in possession of a portion of the property defined as Defendant's property in Paragraph 14 above, which is located within the Project.

28.  Upon information and belief, Defendant claims to own the Property by warranty deed (the "Moon Deed") dated July 28, 2004, conveyed to Defendant by The Moon Family Corporation, as referenced in Paragraph 14 above.

29.  The Moon Deed appears of record in the Office of the Judge of Probate of Lee County, Alabama, in Deed Volume 2265, at page 624.

30.  Defendant has failed and refused to acknowledge Georgia Power's rightful title to the Property.

31.  Defendant is a trespasser on Georgia Power's property.

## Count 3

### (Quiet Title)

32.  Paragraphs 1-31 are incorporated herein by reference.

33.  Defendant claims to own the Property pursuant to the Moon Deed.

34.  Georgia Power owns the Property that is the subject of this action and a part of the Project.

35.  Not only does Georgia Power own the Property, but the express terms of the License, in particular Article 5, also require Georgia Power to own all necessary Project property rights and prevent Georgia Power from conveying any Project works, lands, and waters without FERC's prior written

approval.

36. Defendant's title is, accordingly, with fault.

37. Therefore, a dispute exists between Georgia Power and the Defendant as to the ownership of the Property.

38. Georgia Power calls upon the Defendant to set forth and specify his title, claim and interest upon the Property and how and by what instrument the same is derived and created, and requests that this Court find fault with the same and quiet title to the Property in the name of Georgia Power.

### Count 4

### (Trespass)

39. Paragraphs 1-38 are incorporated herein by reference.

40. Georgia Power possesses legal title to the Property.

41. Defendant has entered said Property, and has erected, caused to be erected, or maintained improvements and/or structures, including but not limited to a portion of the Defendant's residence, boat houses, piers, docks, and floating structures, on Georgia Power's property, without permission from and agreement with Georgia Power.

42. Defendant is a trespasser on Georgia Power's property.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Georgia Power Company respectfully prays:

(1) That process issue and that service be obtained upon Defendant;

(2) That in the event the Court determines that it is necessary, a guardian ad litem be appointed to represent any unknown minor defendants, or any persons of unsound mind, and that this Court make and

10

enter all orders, judgments, and decrees that may be necessary or appropriate;

(3) That notice of the pendency of the complaint be drawn and signed by the register or the clerk of the Court, and the register or clerk shall have such notice published once a week for four consecutive weeks in some newspaper having general circulation and published in the county where the lands lie, or, if no newspaper is published in said county, then in such a newspaper published in an adjoining county, and that the Court prescribe by Order in what newspaper such publication may be made;

(4) That this Court enter a declaratory judgment in favor of Georgia Power and against the Defendant, declaring as follows:

(a) that Georgia Power, by the authority granted to it by FERC under the FPA, is the owner and operator of the Project works, land, and waters, and owns adjacent lands to the Project including the Property described herein;

(b) that the Defendant's use of Georgia Power's Property and denial of access to Georgia Power is in violation of the License, the FPA, Alabama property laws, and Georgia Power's authority and rights thereunder.

(5) That this Court issue an injunction against the Defendant enjoining him from prohibiting Georgia Power use of its Property and interference with Georgia Power's authority and rights under the License, the FPA, and Alabama property laws, and requiring the Defendant to remove his improvements and/or structures from the property.

(6) That this Court grant to Georgia Power mesne profits and damages for waste or any other injury to the lands, as Georgia Power's interests in the lands entitle it to recover, to be computed up to the time of the verdict;

11

(7) That this Court quiet title to reflect that Georgia Power is the owner of all that parcel of land lying below the 525 foot contour line (M.S.L.) of Georgia Power Bartletts Ferry Recreation Development adjacent to Lot Number 1, Block "A", Unit 2 and part of Lot 30, Block 2, Unit 1, of Section 33 of Township 20 North, Range 29 East of Lee County, Alabama.

(8) That this Court, in the Judgment, order that a certified copy thereof be recorded in the Office of the Judge of Probate for the county in which the lands lie;

(9) That this Court issue an injunction against the Defendant prohibiting him from filing in any state court any action against Georgia Power seeking to adjudicate substantially the same issues raised in this Complaint; and

(10) That this Court order such other and further relief as it deems just and proper.

Respectfully submitted this the 4th day of August, 2006.


ADAMS, UMBACH, DAVIDSON
& WHITE, LLP

_Phillip E. Adams_
_____
Phillip E. Adams, Jr. (ADA025)
Post Office Box 2069
Opelika, Alabama 36803-2069

Attorneys for Plaintiff Georgia Power Company

Plaintiff requests service on the Defendant by certified mail at the following address:

Michael Britt Moon
3300 McKee Road
Upatoi, GA 31829

_Phillip E. Adams_
_____
Counsel for Plaintiff

12

Please return to:
Berry, Shelnutt, Day & Hoffman, P.C.
P. O. Box 1437
Columbus, GA 31902-1437
ATTN: Annette L. Luchner

*State of Alabama*
*County of* Lee

# WARRANTY DEED

THIS INDENTURE, made and entered into this the 28th day of July, 2004, between The Moon Family Corporation, of the State of Georgia, County of Harris, hereafter in the Indenture known and designated as Grantor and Michael Britt Moon, of the State of Georgia and County of Harris, hereafter in this Indenture, known as Grantees:

WITNESSETH: That Grantor, for and in consideration of the sum of TEN DOLLARS and 00/100 ( $10.00 ) and other valuable consideration, to Grantor in hand paid, at and before the sealing and delivering of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed and does by these presents grant, bargain, sell and convey to Grantee, and Grantee's respective heirs, successors and assigns, the following real estate to wit:

A tract or parcel of land according to a survey of Part of Lot 1, Block "A", Unit 2 and part of Lot 30, Block 2 unit 1, Lakeview Shore Subdivision, lying in Section 33, Township 20 North, Range 30 East, Lee County Alabama, prepared By Jack B. Shay, R.L.S. Ala. Reg. No. 15457, dated October 24 1993, a copy of which is recorded in Book 1797, Page 008, in the Office of the Judge of Probate of Lee County, Alabama, which plat is incorporated herein and made a part hereof by this specific reference.

TO HAVE AND TO HOLD, the said bargained premises unto Grantee, and Grantee's heirs and assigns, together with all and singular the rights, members and appurtenances thereof to the same in any manner belonging, to the own proper use, benefit and behoof of Grantee, and Grantee's heirs and assigns forever, IN FEE SIMPLE.

And Grantor, for Grantor's self and for Grantor's heirs, executors, administrators, and assigns, the said bargained premises unto Grantee, and Grantee's heirs and assigns, will warrant and forever defend the right and title thereof against Grantor and against the claims of Grantor's heirs, executors, administrators, and assigns, and against the claim of all other persons whomsoever.

IN TESTIMONY WHEREOF, Grantor has hereunto set Grantor's hand and affixed Grantor's seal the day and year first above written.

_____ (L.S.)
GRANTOR  The Moon Family Corporation

Signed, sealed and delivered in the presence of:

_____
Witness

_____
Notary Public,
_____ County, Georgia
My commission expires: 5-18-08

DEED    0265   624
Recorded In Above Book and Page
12/06/2004 01:32:46 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY
No Tax Collected         1.00
Recording Fee            9.00
TOTAL                    9.00

Pt of Lot 8

*Exhibit 'A'*

*Bartletts Ferry*

Boat House Permit

*46-95-208*

SEQ. NO. *5493*

STATE OF GEORGIA

COUNTY OF FULTON

THIS AGREEMENT, made and entered into this ___ day of _____,
19__, between GEORGIA POWER COMPANY, a corporation under the laws of the State of
Georgia, with principal office in Fulton County, said State, party of the first part,
hereinafter for convenience sometimes called the Company, and _____
____ D. E. BLAND _____ whose Post Office address is
____ 3013 Summerville Road _____, ___ Phenix City _____, ___ Alabama ___,
hereinafter for convenience sometimes called the Licensee, party of the second part.
*R&#38;& Salem, Ala.*
W I T N E S S E T H:  THAT,

WHEREAS, The Company is the owner of certain lands in, on and adjacent to
the ___ Chattahoochee _____ River in _____ Harris _____ County, Georgia,
and has constructed a dam known as the __ Bartletts Ferry _____ Dam on and across
its lands on or adjacent to said river and has impounded the waters of said river,
thereby making a lake or reservoir, the waters of which are used or intended to be
used by the Company in its own business and for the purpose of generating electrical
energy; and said reservoir was not intended for boating, swimming or fishing, or for
the building of boat houses, bath houses, docks, wharves, swimming pools or fences,
or for a pleasure resort; and the Company has not and does not now extend any invita-
tion, either expressed or implied, to use its reservoir or lands adjacent thereto for
boating, swimming or fishing, or for the erection of boat houses, bath houses, docks,
wharves, swimming pools or fences; and

WHEREAS, the Licensee has requested permission to erect and maintain a boat
house or boat landing on the property of the Company, said boat house or boat landing
to be located substantially as shown on plat hereto attached and made a part hereof;
and

WHEREAS, it is proper that an agreement be entered into so that there will
be no misunderstanding as to the ownership and control of said reservoir, the waters
or lands adjacent thereto or of said boat house or boat landing.

NOW THEREFORE, in consideration of the premises and the annual payment of
____ Ten and no/100 ($ 10.00 ) Dollars, and the mutual covenants herein contained, the
Company hereby grants to the Licensee a mere license or permit to erect and maintain
a boat house or boat landing on the following described lands of the Company in or
adjacent to said reservoir, to-wit:

All that tract or parcel of land lying and being below the five
hundred twenty-five (525) foot contour line, U. S. G. S. Datum,
in front of Lot 1 of Block A, Unit 2 of the Lakeview Shores Sub-
division, located in Section 33, Township 20 North, Range 29
East of Lee County, Alabama.

This mere license or permit is granted by the Company and accepted by the
Licensee subject to the following terms and conditions:

*Exhibit "B"*

1. Said reservoir is the property of the Company and said dam was built and is being operated and maintained to hold back, retain, accumulate and store the waters of said river and its tributaries and the Company has the full, unconditional, unrestricted and complete right and privilege to raise or lower, restrict, control, store, retain, withhold, increase, decrease, retard, stop, obstruct, divert or use the waters of said reservoir in any manner the Company, its successors and assigns, may deem expedient; and the erection, operation and maintenance by the Licensee of said boat house or boat landing is in no way to interfere with the use, regulation or control of said reservoir or the waters thereof in any manner the Company, its successors or assigns, may see fit in its or their own interests, and this permit is subordinate to the use, regulation and control of said reservoir and the waters thereof by the Company, its successors and assigns, in its own business or in any business in which the Company, its successors or assigns, may wish to engage in reference to said reservoir or the use of the waters thereof.

2. Licensee agrees that the Licensee does not now nor will the Licensee, the Licensee's heirs, administrators, successors or assigns, hereafter set up any claim or property rights in or to said reservoir or to the lands or property of the Company on or adjacent to said reservoir by reason of the occupancy or use of said boat house or boat landing under this agreement.

3. This mere license or permit is a personal privilege and will not be used by the Licensee for any commercial or business purposes. This mere license or permit is for the period of one year, commencing on the __1st day of January__, 19_55_, and thereafter from year to year, subject to cancellation or revocation at any time at the pleasure of either party hereto.

4. As one of the valuable considerations for the privilege hereby granted, Licensee assumes all risk of accidents and expressly agrees that the Company, its officers, agents and employees, its successors and assigns, shall not be liable under any circumstances whatsoever, for death or injury to person or persons or for loss, injury or damage of any kind to property while on the property of the Company, under this permit, whether such loss, death, injury or damage is caused by negligence or otherwise; that the privilege or permit hereby granted is not exclusive, is not transferable and is subject to revocation or cancellation at any time by the Company or its authorized representatives; such revocation or cancellation may be either verbal or written and is to be effective immediately and without further notice; if this permit is revoked or cancelled, said boat house or boat landing is to be removed within a reasonable time, not exceeding sixty days from the date of notice, by and at the expense or the Licensee and if not so removed by the Licensee, the boat house or boat landing shall forthwith become the property of the Company and without expense or cost to the Company.

IN WITNESS WHEREOF, the parties have executed this agreement in duplicate, the day and year first above written.

_witnessed this 18th day_
_of January - 1955_

GEORGIA POWER COMPANY

By _____
Assistant Manager, Land Department

_____
Licensee



M

A

33

LAKEVIEW SHORES
SUBDIVISION

32

T-20-N
T-19-N

BOAT DOCK PERMIT
Block "I" Unit "I"
1-
2-
3-
5-
7-
9-
11-
13-
15-
17-
19-
21-
23-
OFFICE LOT -46-95-
Beach Area-
Block "A" Unit 2
1- TO -70-
3-
5-
7-
9-
Block "D" Unit 2
23-
24-
25-
25A-

GEORGIA POWER COMPANY
Land Department
LAKE: BARTLETTS FERRY
BOAT DOCK PERMIT NO: 46-95-
LEE            COUNTY, ALA,
33      SECTION
FOR: J.E. Bland
Scale 1-INCH = 800 -Feet

NOTE: In your correspondence
regarding this lease
please refer to
File No. 46-95-1242A

STATE OF GEORGIA

COUNTY OF FULTON

**Access Lease**

THIS AGREEMENT made and entered into this ___1st.___ day of ___August___ 19_91_

between GEORGIA POWER COMPANY, a corporation organized and existing under the laws of the State of Georgia, hereinafter referred to as the "Lessor," and

MS. DOROTHY MOTLEY, 603 LEE ROAD 346, SALEM, ALABAMA 36874 hereinafter referred to as the "Lessee"

W I T N E S S E T H :

WHEREAS, the Lessor is the owner and developer of a hydroelectric development in ___Lee___ County,

_AL_, and has constructed, in connection with said development, a dam known as ___Bartletts Ferry___ Dam

and backed up and impounded waters thereby making a reservoir known as ___Harding___ Lake,

the waters of which are used and intended to be used by the Lessor in its general business of generating and transmitting electrical energy for use at various places

in the State of Georgia; and

WHEREAS, the Lessee and other persons desire to construct and maintain in proximity to said reservoir a residence or camp and desire to use the waters of said reservoir for fishing, boating, bathing or the building of boathouses and bathhouses and for general recreational purposes; and

WHEREAS, the Lessor, while not expressly inviting the use of said reservoir site for the foregoing named purposes, does not object thereto insofar as such activities do not interfere with its operation of said hydroelectric development, and insofar as such activities will not interfere with any operation which Lessor may later make of said hydroelectric development; and

WHEREAS, the Lessee desires to lease from Lessor certain property in proximity to said reservoir as more fully hereinafter described,

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the Lessor has rented and leased to Lessee and the Lessee has rented and leased from the Lessor the following described tract or parcel of land, to-wit:

All that parcel of land lying below the 525 foot contour (M.S.L.) of Georgia Power Bartletts Ferry Recreation Development adjacent to Lot Number 1 Block A, in Section 33 of T20N,R29E of Lee County, Alabama, as shown outlined in red on map attached hereto as Exhibit "A" and made a part hereof.

subject, however, to the conditions, provisions, terms and covenants hereinafter set out:

(SPECIAL CONDITION) Lessee, accepts and leases said tract of land with the understanding that in the event Lessor needs or requires the use of said tract in any future development or use in the conduct of its business, this lease shall be terminated by written notice as provided in paragraph 3 below, and all buildings or improvements, etc., located thereon shall be removed as provided for in sub-paragraph 2a below. All cost incurred in removal of said buildings or improvements shall be borne by the Lessee, and Lessee agrees not to resist or assail this right or any other right of Lessor to cancel this lease as provided herein.

1. The term of this Lease begins on the ___1st.___ day of ___August___ 19_91_

and ends on the ___28th.___ day of ___February, 2003___ 19___ (the "Term") unless sooner terminated in accordance with the terms hereof. Upon expiration of the Term by passage of time and provided no default of Lessee has then occurred and remains uncured, this Lease may be renewable at the option of Lessee for an additional period not to exceed fifteen years subject to the then current policies, rules, regulations, forms and rental rates established by Lessor.

2. Lessee agrees to pay to Lessor, as annual rental for said property, at Lessor's principal office in the City of Atlanta, Georgia, on or before

___March 1st.___ each year, in advance, during the Term of this Lease, the sum of ___$10.00___ DOLLARS

for the period of ___August 1___ 19_91_ to ___February 28,2003___ the sum of _____ DOLLARS

for the period of _____ to _____ the sum of _____ DOLLARS

for the period of _____ to _____ the sum of _____ DOLLARS. All payments of rent shall be in good funds at Lessor's

principal office.

3. Either Lessor or Lessee shall have the right to terminate this lease subject to conditions hereinafter set out, by giving the other party ninety (90) days written notice in advance of such party's intention to terminate, which right of termination shall be without cause, and at the expiration of said ninety (90) days notice said lease shall terminate.

(a) At the termination of said ninety (90) days advance written notice, whether said notice is given by the Lessor to the Lessee or by the Lessee to the Lessor, the Lessee shall have sixty (60) days from the date of the expiration of said notice in which to remove any and all buildings, constructions, improvements or facilities which may have been placed on said leased premises by the Lessee, or to sell and transfer said buildings, constructions, improvements or facilities subject to the approval of Lessor. In the event that said buildings, constructions, improvements or facilities shall not have been removed within sixty (60) days after the termination of said lease as in this subparagraph provided, or the Lessee shall not have made a sale or transfer thereof with the express approval of the Lessor, then the Lessor shall remove or cause to be removed such buildings, constructions, improvements or facilities from said leased premises at the expense of Lessee, and shall have the right to sell and dispose of said buildings, constructions, improvements or facilities as salvage at private sale at the best obtainable price therefor.

(b) It is expressly understood that any buildings, constructions, improvements or facilities that may be placed upon said leased premises by Lessee are expressly subject to the right of the Lessor to flood and backwater over and upon any portion of the above described land and to extend or enlarge Lessor's said hydroelectric development, and subject to said Lessor's right to extend and enlarge said hydroelectric reservoir to include the premises herein leased, and subject to Lessor's right in the extension and expansion of the said operation to flood said leased premises by raising the dam level of said reservoir, with the provision that in the event of said extension or expansion the Lessor shall give to the Lessee written notice to terminate this lease agreement without cause as hereinabove provided; and with the further provision that after the termination of this lease agreement, the Lessee shall have an additional sixty (60) days in which to remove any and all buildings, constructions, improvements or facilities placed by Lessee on said leased premises or used by Lessee on said leased premises. Any such buildings, constructions, improvements or facilities placed by Lessee on said leased premises, shall be placed thereon at the peril of the Lessee with full notice and knowledge that the Lessor has the right to enlarge its said operation as herein provided.

(c) Upon termination of this lease by the Lessor, except for such causes as are hereinafter specified in paragraph 13, any unearned rentals prorated on a daily basis which have been collected by Lessor from Lessee, shall be refunded to Lessee.

(d) Upon any termination of this lease by Lessee, or by the Lessor for causes as provided in paragraph 13, no refund or unearned rentals shall be made to Lessee except such rentals as may have been paid for calendar years subsequent to the year in which the termination occurs.

4. Subject to conditions and provisions set out in this lease, the Lessee shall not construct or maintain upon the leased premises any building other than a boathouse, pier, dock or swimming float the specific plans for which must be approved in writing by the Lessor in advance of construction. Lessee shall not permit the discharge of sewage or other objectionable matter in the waters of said reservoir. Lessee shall further provide at his own expense adequate garbage or refuse disposal facilities, and shall not place garbage or refuse on other property of Lessor or premises of other tenants of Lessor.

5. Lessee shall not assign this lease, nor let or sub-let the premises or any part thereof, nor use, nor permit to be used, the said premises for any purpose other than as specified herein without Lessor's written consent. It is expressly agreed that the premises shall not be used for commercial purposes, nor in any manner or way which would be in violation of any National, State or Local laws. Lessee agrees not to use nor permit the premises to be used in any manner or for any purpose which might limit or interfere with Lessor's business.

701126B  M103

BOOK 1629 PAGE 327

6a. Lessor reserves the right to grant to other parties the right to obtain water from the springs or branches on, across or adjacent to the property here... and Lessee will not interfere with others having such right or permit from the Lessor.

6b. Lessor reserves the right to grant to state or municipal governments or other parties the right to locate and use a road on, across or adjacent to the prop... herein leased and Lessee will not interfere with others having such right or permit from the Lessor.

7. By the acceptance of this Lease, Lessee expressly acknowledges and agrees that the premises may or may not be suitable for the purposes for which Lessee desires to use same; or that the premises may not be in a safe or proper condition for such use. Further, Lessee shall and does hereby agree to indemnify and save harmless and defend the Company from the payment of any sum or sums of money to any person whomever (including third persons, subcontractors, Lessee, Company, and agents and employees of them) on account of claims or suits growing out of injuries to persons (including death) or damage to property (including property of Company) in any way attributable to or arising out of the use of the premises by Lessee, as provided in this Agreement, including (but without limiting the generality of the foregoing, all liens, garnishments, attachments, claims, suits, judgments, costs, attorney's fees, cost of investigation and of defense, and excepting only those situations where the injuries, and damages claimed have been caused by reason of the sole negligence on the part of the Company, its agents or employees. Lessee having accepted the premises in the present condition and having agreed that said premises may not be suitable for the use intended by Lessee and further that the premises may not be in a safe or proper condition for such use, it the liability of the Company arises due to the condition of the premises or the suitability of said premises for the use intended in this Agreement, such shall not be deemed the sole negligence of the Company.

8. Lessee in accepting this lease agrees to use every precaution to prevent the spread of fires on said premises and lands adjacent thereto and to be liable and responsible for any fire damage to trees or timber of the Lessor on said premises and lands of the Lessor adjacent thereto that may be, in any manner, traceable to Lessee's use of said premises as herein provided.

9. Wherever this lease provides for the giving of notice by the Lessor to the Lessee, the same shall be deemed received by the Lessee from the date said notice shall have been duly mailed through the United States mail, directed to Lessee at Lessee's last known place of residence.

10. This agreement shall inure to the benefit of and be binding upon the successors and assigns of the Lessor, as well as upon the Lessor itself.

11. Lessee agrees to use and occupy said property subject to all rules and regulations which Lessor has promulgated for the use of said premises or which it may hereafter adopt for the use of said property. Lessee further agrees that Lessor, its officers, agents and employees or other persons authorized by Lessor, shall have the right at any and all times to enter upon said premises in its and their business, it being understood and agreed that Lessor's right of ingress and egress shall always exist and shall not be interfered with, including the right to cut and remove such trees that are deemed desirable or expedient for the protection of Lessor's property and forestry program, including easement rights of utility companies for utilities granted or to be granted by Lessor.

12. Lessor reserves the full, unconditional, unrestricted and complete right and privilege to raise or lower, restrict, control, store, retain, withhold, increase, decrease, retard, stop, obstruct, divert, or use the waters of said reservoir in any manner Lessor, its successors or assigns, may deem expedient or desirable in its own business or in any business in which Lessor may wish to engage.

13. The causes hereinabove referred to as the cause for which Lessor may terminate this lease are as follows:

    (a) Failure to pay the rent when due.
    (b) Failure to pay taxes as provided in paragraphs 14 and 19.
    (c) Removing or manifesting any intention of removing any building or structure located upon the leased premises without the written permission from the Lessor.
    (d) Conviction of violation of any Federal, State, County or Local law.
    (e) Promiscuous discharging of fire arms on any property of Lessor.
    (f) The dumping of garbage or refuse on other lands of the Lessor.
    (g) Failure to comply with any of the covenants, terms or conditions of this lease after thirty (30) days written notice from the Lessor to the Lessee requesting the Lessee to comply therewith.

When terminating for cause, the Lessor shall give to the Lessee ten (10) days written notice which shall state the cause for which said lease has been terminated. At the expiration of said ten (10) days written notice, if the said cause for which said notice is given shall not have been cured and removed, the Lessee's rights and privileges herein shall cease, with this exception that the Lessee shall have sixty (60) days thereafter in which to remove any and all buildings, constructions, improvements or facilities placed by the Lessee on the said leased premises or used by the Lessee on the said leased premises. If at the expiration of said sixty (60) days time the Lessee shall not have removed said buildings, constructions, improvements or facilities, then in which event said buildings, constructions, improvements or facilities shall become the property of the Lessor.

14. The Lessee agrees to deliver said premises at the expiration, cancellation or termination of this lease in as good condition as when received by Lessee. All taxes which may be assessed on the buildings, constructions, improvements or facilities erected by Lessee on said premises during the term of this lease shall be paid by the Lessee.

15. Any failure on the part of Lessor to take action on one or more violations of any term of this lease shall not be deemed a waiver of its right to take action against future violations.

16. The Lessee agrees that its use or occupancy of said premises is subject to the provisions, terms and conditions set forth in the Federal Energy Regulatory Commission license for the Project or Development and in the Federal Power Act, both of which are hereby incorporated by reference as a part of this agreement, and shall be subject to such orders, rules and regulations as the Federal Energy Regulatory Commission has issued or may issue as prescribed under the provisions of the Federal Power Act.

17. The Lessee agrees that this agreement and its use or occupancy of said premises shall be subject to the indenture executed by Lessor and the New York Trust Company, Trustee, dated March 1, 1941, and to any and all rights of the mortgagee and/or security holders and to all restrictions and provisions therein contained.

18. This agreement is the entire agreement of the parties, and they shall not be bound by any statement, agreement or understanding not contained herein.

19. In addition to the taxes and assessments required to be paid by Lessee with respect to the Structure, the Facilities or other property of Lessee located at or upon the Premises, Lessee agrees that Lessee shall be responsible for and shall pay all taxes and assessments which may be charged or assessed against the Premises during the Term, whether such taxes and assessments are initially charged by the applicable taxing authority against Lessor or Lessee. In the event the Premises are assessed by the applicable taxing authority together with other lots or parcels of property owned by Lessor, Lessee shall pay to Lessor an allocable portion of the taxes and assessments charged against Lessor determined by dividing the total amount of such taxes and assessments applicable to the property of which the Premises are a part by the number of separate lots or parcels comprising such property. Lessee's allocable share of such taxes and assessments shall be paid by Lessee to Lessor within thirty (30) days after receipt by Lessee of a statement therefor from Lessor.

20. Lessee hereby agrees and covenants not to use and will prohibit agents, employees and contractors of Lessee from using any tools, equipment or machinery within eight (8) feet of the Company's electrical conductors situated on the premises. Lessee agrees to comply with Official Code of Georgia Section 46-3-30 et seq., (SAFEGUARDS AGAINST CONTACT WITH HIGH-VOLTAGE LINES) and the Rules and Regulations of the State of Georgia Section 300-3-7.01 et seq., (HIGH VOLTAGE ACT) regarding said conductors.

21. Lessee shall not permit any mechanics or materialmen's or other liens to be filed or placed against the premises by reason of work, services or materials supplied to or claimed to have been supplied to the Lessee.

22. Lessee shall not place or store, or permit to be placed or stored any Hazardous Substances (as defined in 42 U.S.C. Sections 9601, et seq.) petroleum products or other pollutants, toxic substances or environmental hazards on or under the premises.

SPECIAL STIPULATIONS:

IN WITNESS WHEREOF, Lessor, by and through a duly appointed officer, and Lessee have caused this Lease to be executed, their respective seals affixed hereto, and have delivered fully executed counterparts hereof, each to the other.

Witness as to Lessor:

_(signature)_

_(signature) Rebecca S. Rudisill_     Notary

GEORGIA POWER COMPANY (LESSOR)

By _(signature)_ _____ (SEAL)
    GLENN IVIE
    MANAGER – LAND MANAGEMENT

Witness as to Lessee:

_(signature) Regina Glass_

_(signature) Martha Cato_

(LESSEE)

_(signature) Dorothy Motley_ _____ (SEAL)
    DOROTHY MOTLEY

MARTHA N. CATO, NOTARY PUBLIC
CHAMBERS COUNTY, STATE OF ALABAMA
MY COMMISSION EXPIRES 01-08-96

701126B  MCS100

BOOK 1049 PAGE 038



EXHIBIT "D"

CCCO -OO9900 - 887-OOICO-OIC8$5

A.(T)

NOTE: In your correspondence regarding this lease please refer to File No. **46-95-1242**A

**Access Lease**

STATE OF GEORGIA

COUNTY OF FULTON

THIS AGREEMENT made and entered into this **1st.** day of **December** , 19**94**

between GEORGIA POWER COMPANY, a corporation organized and existing under the laws of the State of Georgia, hereinafter referred to as the "Lessor," and **Daphne Grissett, 603 Lee Road 843, Salem, Alabama 36874** , hereinafter referred to as the "Lessee,"
**James David Grissett, 603 Lee Road 843, Salem, Alabama 36874**
WITNESSETH:

WHEREAS, the Lessor is the owner and developer of a hydroelectric development in _____ **Lee** _____ County,

and has constructed, in connection with said development, a dam known as _____ **Bartletts Ferry** _____ Dam

and backed up and impounded waters thereby making a reservoir known as _____ **Harding** _____ Lake,

the waters of which are used and intended to be used by the Lessor in its general business of generating and transmitting electrical energy for use at various places

in the State of Georgia; and

WHEREAS, the Lessee and other persons desire to construct and maintain in proximity to said reservoir a residence or camp and desire to use the waters of said reservoir for fishing, boating, bathing or the building of boathouses and bathhouses and for general recreational purposes; and

WHEREAS, the Lessor, while not expressly inviting the use of said reservoir site for the foregoing named purposes, does not object thereto insofar as such activities do not interfere with its operation of said hydroelectric development, and insofar as such activities will not interfere with any operation which Lessor may later make of said hydroelectric development; and

WHEREAS, the Lessee desires to lease from Lessor certain property in proximity to said reservoir as more fully hereinafter described,

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the Lessor has rented and leased to Lessee and the Lessee has rented and leased from the Lessor the following described tract or parcel of land, to wit:

All that parcel of land lying below the 525 foot contour (M.S.L.) of Georgia Power Bartletts Ferry Recreation Development adjacent to Lot Number 1 Block "A", Unit 2 and part of Lot 30, Block 2 Unit 1, of Section 33 of T20N, R29E of Lee County, Alabama, as shown outlined in red on map attached hereto as Exhibit "A" and made a part hereof.

subject, however, to the conditions, provisions, terms and covenants hereinafter set out:

(SPECIAL CONDITION) Lessee, accepts and leases said tract of land with the understanding that in the event Lessor needs or requires the use of said tract in any future development or use in the conduct of its business, this lease shall be terminated by written notice as provided in paragraph 3 below, and all buildings or improvements, etc., located thereon shall be removed as provided for in such paragraph 3a below. All cost incurred in removal of said buildings or improvements shall be borne by the Lessee, and Lessee agrees not to resist or assail this right or any other right of Lessor to cancel this lease as provided herein.

1. The term of this Lease begins on the _____ **1st.** day of _____ **December** , 19**94**

and ends on the _____ **28th.** day of _____ **February, 2009** _____ (the "Term") unless sooner terminated in accordance with the terms hereof. Upon expiration of the Term by passage of time and provided no default of Lessee has then occurred and remains uncured, this Lease may be renewable at the option of Lessee for an additional period not to exceed fifteen years subject to the then current policies, rules, regulations, forms and rental rates established by Lessor.

2. Lessee agrees to pay to Lessor, as annual rental for said property, at Lessor's principal office in the City of Atlanta, Georgia, on or before

__XXXXXXXXXXXXXXXXXXXXXXXXXXXKK KKK__ in advance, during the Term of this Lease, the sum of _____ **$300.00** _____ DOLLARS

for the period of **December 1** _____ 19**94** to **February 28, 2009** , the sum of _____ DOLLARS

for the period of _____ , to _____ , the sum of _____ DOLLARS

for the period of _____ _____ to _____ . All payments of rent shall be in good funds at Lessor's

principal office.

3. Either Lessor or Lessee shall have the right to terminate this lease subject to conditions hereinafter set out, by giving the other party ninety (90) days written notice in advance of such party's intention to terminate, which right of termination shall be without cause, and at the expiration of said ninety (90) days notice said lease shall terminate.

(a) At the termination of said ninety (90) days advance written notice, whether said notice is given by the Lessor to the Lessee or by the Lessee to the Lessor, the Lessee shall have sixty (60) days from the date of the expiration of said notice in which to remove any and all buildings, constructions, improvements or facilities which may have been placed on said leased premises by the Lessee, or to sell and transfer said buildings, constructions, improvements or facilities subject to the approval of Lessor. In the event that said buildings, constructions, improvements or facilities shall not have been removed within sixty (60) days after the termination of said lease as in this subparagraph provided, or the Lessee shall not have made a sale or transfer thereof with the express approval of the Lessor, then the Lessor shall remove or cause to be removed such buildings, constructions, improvements or facilities from said leased premises at the expense of Lessee, and shall have the right to sell and dispose of said buildings, constructions, improvements or facilities as salvage at private sale at the best obtainable price therefor.

(b) It is expressly understood that any buildings, constructions, improvements or facilities that may be placed upon said leased premises by Lessee are expressly subject to the right of the Lessor to flood and backwater over and upon any portion of the above described land and to extend or enlarge Lessor's said hydroelectric development, and subject to said Lessor's right to extend and enlarge said hydroelectric reservoir to include the premises herein leased, and subject to Lessor's right in the extension and expansion of the said operation to flood said leased premises by raising the dam level of said reservoir, with the provision that in the event of said extension or expansion the Lessor shall give to the Lessee written notice to terminate this lease agreement, and in the event such cause as hereinbefore provided; and with the further provision that after the termination of this lease agreement, the Lessee shall have an additional sixty (60) days in which to remove any and all buildings, constructions, improvements or facilities placed by Lessee on said leased premises, or used by Lessee on said leased premises. Any such buildings, constructions, improvements or facilities which Lessee may place on said leased premises shall be placed thereon at the peril of the Lessee with full notice and knowledge that the Lessor has the right to enlarge its said operation as herein provided.

(c) Upon termination of this lease by the Lessor, except for such causes as are hereinafter specified in paragraph 13, any unearned rentals prorated on a daily basis which have been collected by Lessor from Lessee, shall be refunded to Lessee.

(d) Upon any termination of this lease by Lessee, or by the Lessor for cause as provided in paragraph 13, no refund of unearned rentals shall be made to Lessee except such rentals as may have been paid for calendar years subsequent to the year in which the termination occurs.

4. Subject to conditions and provisions set out in this lease, the Lessee shall not construct or maintain upon the leased premises any building other than a boathouse, pier, dock or swimming float the specific plans for which must be approved in writing by the Lessor in advance of construction. Lessee shall not permit the discharge of sewage or other objectionable matter in the waters of said reservoir. Lessee shall further provide at his own expense adequate garbage or refuse disposal facilities, and shall not place garbage or refuse on other property of Lessor or premises of other tenants of Lessor.

5. Lessee shall not assign this lease, nor let or sub-let the premises or any part thereof, nor use, nor permit to be used, the said premises for any purpose other than as specified herein without Lessor's written consent. It is expressly agreed that the premises shall not be used for commercial purposes, nor in any manner or way which would be in violation of any National, State or Local laws. Lessee agrees not to use nor permit the premises to be used in any manner or for any purpose which might limit or interfere with Lessor's business.

CONFIDENTIAL

6a. Lessor reserves the right to grant to other parties the right to obtain water from the springs or branches on, across or adjacent to the property herein leased, and Lessee will not interfere with others having such right or permit from the Lessor.

6b. Lessor reserves the right to grant to state or municipal governments or other parties the right to locate and use a road on, across or adjacent to the property herein leased and Lessee will not interfere with others having such right or permit from the Lessor.

7. By the acceptance of this Lease, Lessee expressly acknowledges and agrees that the premises may or may not be suitable for the purposes for which Lessee desires to use same, or that the premises may not be in a safe or proper condition for such use. Further, Lessee shall and does hereby agree to indemnify and save harmless and defend the Company from the payment of any sum or sums of money to any person whomsoever (including third persons, subcontractors, Lessee, Company, and agents and employees of them) on account of claims or suits growing out of injuries to persons (including death) or damage to property (including property of Company) in any way attributable to or arising out of the use of the premises by Lessee, as provided in this Agreement, including (but without limiting the generality of the foregoing, all liens, garnishments, attachments, claims, suits, judgments, costs, attorney's fees, cost of investigation and of defense, and excepting only those situations where the injuries, and damages claimed have been caused by reason of the sole negligence on the part of the Company, its agents or employees. Lessee having accepted the premises in the present condition and having agreed that said premises may not be suitable for the use intended by Lessee and further that the premises may not be in a safe or proper condition for such use, if the liability of the Company arises due to the condition of the premises or the suitability of said premises for the use intended in this Agreement, such shall not be deemed the sole negligence of the Company.

8. Lessee in accepting this lease agrees to use every precaution to prevent the spread of fires on said premises and lands adjacent thereto and to be liable and responsible for any fire damage to trees or timber of the Lessor on said premises and lands of the Lessor adjacent thereto that may be, in any manner, traceable to Lessee's use of said premises as herein provided.

9. Whenever this lease provides for the giving of notice by the Lessor to the Lessee, the same shall be deemed received by the Lessee from the date said notice shall have been duly mailed through the United States mail, directed to Lessee at Lessee's last known place of residence.

10. This agreement shall inure to the benefit of and be binding upon the successors and assigns of the Lessor, as well as upon the Lessor itself.

11. Lessee agrees to use and occupy said property subject to all rules and regulations which Lessor has promulgated for the use of said premises or which it may hereafter adopt for the use of said property. Lessee further agrees that Lessor, its officers, agents and employees or other persons authorized by Lessor, shall have the right at any and all times to enter upon said premises in its and their business, it being understood and agreed that Lessor's right of ingress and egress shall always exist and shall not be interfered with, including the right to cut and remove such trees that are deemed desirable or necessary for the protection of Lessor's property and forestry program, including easement rights of utility companies for utilities granted or to be granted by Lessor.

12. Lessor reserves the full, unconditional, unrestricted and complete right and privilege to raise or lower, restrict, control, store, retain, withhold, increase, decrease, retard, stop, obstruct, divert, or use the waters of said reservoir in any manner Lessor, its successors or assigns, may deem expedient or desirable in its own business or in any business in which Lessor may wish to engage.

13. The causes hereinabove referred to as the cause for which Lessor may terminate this lease are as follows:

(a) Failure to pay the rent when due.
(b) Failure to pay taxes as provided in paragraphs 14 and 19.
(c) Removing or manifesting any intention of removing any building or structure located upon the leased premises without the written permission from the Lessor.
(d) Conviction of violation of any Federal, State, County or Local law.
(e) Promiscuous discharging of fire arms on any property of Lessor.
(f) The dumping of garbage or refuse on other lands of the Lessor.
(g) Failure to comply with any of the covenants, terms or conditions of this lease after thirty (30) days written notice from the Lessor to the Lessee requesting the Lessee to comply therewith.

When terminating for cause, the Lessor shall give to the Lessee ten (10) days written notice which shall state the cause for which said lease has been terminated. At the expiration of said ten (10) days written notice, if the said cause for which said notice is given shall not have been cured and removed, the Lessee's rights and privileges herein shall cease, with the exception that the Lessee shall have sixty (60) days thereafter in which to remove any and all buildings, constructions, improvements or facilities placed by the Lessee on the said leased premises or used by the Lessee on the said leased premises. If at the expiration of said sixty (60) days time the Lessee shall not have removed said buildings, constructions, improvements or facilities, then in which event said buildings, constructions, improvements or facilities shall become the property of the Lessor.

14. The Lessee agrees to deliver said premises at the expiration, cancellation or termination of this lease in as good condition as when received by Lessee. All taxes which may be assessed on the buildings, constructions, improvements or facilities erected by Lessee on said premises during the term of this lease shall be paid by the Lessee.

15. Any failure on the part of Lessor to take action on one or more violations of any term of this lease shall not be deemed a waiver of its right to take action against future violations.

16. The Lessee agrees that its use or occupancy of said premises is subject to the provisions, terms and conditions set forth in the Federal Energy Regulatory Commission license for the Project or Development and in the Federal Power Act, both of which are hereby incorporated by reference as a part of this agreement, and shall be subject to such orders, rules and regulations as the Federal Energy Regulatory Commission has issued or may issue as prescribed under the provisions of the Federal Power Act.

17. The Lessee agrees that this agreement and its use or occupancy of said premises shall be subject to the Indenture executed by Lessor and the New York Trust Company, Trustee, dated March 1, 1941, and to any and all rights of the mortgagees and/or security holders and to all restrictions and provisions therein contained.

18. This agreement is the entire agreement of the parties, and they shall not be bound by any statement, agreement or understanding not contained herein.

19. In addition to the taxes and assessments required to be paid by Lessee with respect to the Structure, the Facilities or other property of Lessee located at or upon the Premises, Lessee agrees that Lessee shall be responsible for and shall pay all taxes and assessments which may be charged or assessed against the Premises during the Term, whether such taxes and assessments are initially charged by the applicable taxing authority against Lessor or Lessee. In the event the Premises are assessed by the applicable taxing authority together with other lots or parcels of property owned by Lessor, Lessee shall pay to Lessor an allocable portion of the taxes and assessments charged against Lessor determined by dividing the total amount of such taxes and assessments applicable to the property of which the Premises are a part by the number of separate lots or parcels comprising such property. Lessee's allocable share of such taxes and assessments shall be paid by Lessee to Lessor within thirty (30) days after receipt by Lessee of a statement therefor from Lessor.

20. Lessee hereby agrees and covenants not to use and will prohibit agents, employees and contractors of Lessee from using any tools, equipment or machinery within eight (8) feet of the Company's electrical conductors situated on the premises. Lessee agrees to comply with Official Code of Georgia Section 46-3-30 et seq., (SAFEGUARDS AGAINST CONTACT WITH HIGH-VOLTAGE LINES) and the Rules and Regulations of the State of Georgia Section 300-3-7.01 et seq., (HIGH VOLTAGE ACT) regarding said conductors.

21. Lessee shall not permit any mechanics or materialmen's or other liens to be filed or placed against the premises by reason of work, services or materials supplied to or claimed to have been supplied to the Lessee.

22. Lessee shall not place or store, or permit to be placed or stored any Hazardous Substances (as defined in 42 U.S.C. Sections 9901, et seq.) petroleum products or other pollutants, toxic substances or environmental hazards on or under the premises.

SPECIAL STIPULATIONS:

IN WITNESS WHEREOF, Lessor, by and through a duly appointed officer, and Lessee have caused this Lease to be executed, their respective seals affixed hereto, and have delivered fully executed counterparts hereof, each to the other.

Witness as to Lessor:

GEORGIA POWER COMPANY (LESSOR)

EDITH C. WHITE
NOTARY PUBLIC
MUSCOGEE COUNTY GEORGIA
COMMISSION EXPIRES SEPT. 16, 1997

C. Zetterower _____ (SEAL)
Lake Resources Manager

Witness as to Lessee:

(LESSEE)

Daphne Grissett _____ (SEAL)
Daphne Grissett

Notary Public

James David Grissett _____ (SEAL)

STATE OF ALABAMA, NOTARY AT LARGE
MY COMMISSION EXPIRES JULY 6, 1998

7011208H  MCG100